## IN THE MATTER OF WALTER E. PALMER.

Suffolk. March 2, 1992. - July 8, 1992.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding, Public censure.

On appeal by the Bar Counsel from a judgment of a single justice of this court imposing a private reprimand on an attorney who, while acting as executor and attorney for an estate, charged a clearly excessive fee, filed a probate account containing misrepresentations and inaccurate statements as to amounts received and expended by the estate, and neglected a legal matter pertaining to the estate, the full court concluded that, in light of the attorney's prior disciplinary record, the lack of mitigating factors, and the recommendation of the Board of Bar Overseers that the attorney be publicly censured, the judgment of the single justice was markedly disparate from the sanctions imposed by the various single justices in similar cases, and ordered a public censure. [37-41]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on September 17, 1991.

The case was heard by *Nolan*, J.

*Nancy E. Kaufman*, Assistant Bar Counsel.

*Nancy E. Palmer* for the respondent.

LIACOS, C.J. The issue before us is the appropriate level of discipline to be imposed on an attorney who, while acting as executor and attorney for an estate, charged a clearly excessive fee, filed a probate account containing misrepresentations and inaccurate statements as to amounts received and expended by the estate, and neglected a legal matter pertaining to the estate. The Board of Bar Overseers (board) recommended that the attorney, who has previously received a private reprimand for neglecting an estate, be publicly censured. A single justice of this court issued an order, without opinion, imposing a private reprimand. Bar counsel appealed. We reverse and order a public censure.

1. *Facts.* We summarize the facts as found by the hearing committee, as modified by an appeals panel of the board, and as accepted by the board. See S.J.C. Rule 4:01, § 8, as amended, 411 Mass. 1315 (1991). The respondent, Walter E. Palmer, was admitted to the Massachusetts bar in 1957. In 1984, Palmer drafted a will for one Doris Dervan, who was hospitalized with cancer at the time. Dervan died on January 20, 1985, leaving her ninety-two year old mother, Julia Ward, as her sole heir. Palmer was appointed executor for the estate, and he proceeded to act as the estate's attorney as well.

Dervan's estate was of modest size, consisting of personal property valued at approximately $20,000 and a house valued at approximately $145,000. Most of these assets were already in Julia Ward's possession at the time of Dervan's death, and Palmer did not encounter any unusual difficulties in administering the estate.[1] Nevertheless, Palmer charged the estate a legal fee of $12,142.06 and an "executor commission" of $5,203.74. These fees total $17,345.80; the hearing committee found that a reasonable fee for the administration of the estate would not exceed $9,500.

On June 9, 1986, Palmer filed a "First and Final" account in the Norfolk Probate and Family Court. This account, which was signed "under the pains and penalties of perjury," purported to reflect the activities of the estate between March 11, 1985, and December 31, 1985.[2] The panel found that the account "contained inaccuracies and misstatements" in that it "misrepresented the amount of non-probate funds received from Julia Ward, failed to account for interest earned on her funds, showed payments for funeral services for which Julia Ward had paid, misrepresented that estate taxes had been paid in December, 1985, showed payments to

---

[1] The title to the house passed to Ward under the will. She obtained her own counsel to assist her in discharging a $21,000 mortgage that was outstanding on the house.

[2] The hearing committee found that Palmer's secretary had actually signed his name to the account and that he adopted the signature as his own.

the Respondent for legal fees which were not yet paid and showed a payment of $5,308.80 to Staff Builders [Dervan's private nursing care provider] which Respondent knew had not been made. The Respondent also misrepresented that all estate funds had been disbursed when he had $6,175.99 in the estate account." On these findings the panel and the board concluded that the respondent violated Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102(A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), and Canon 6, DR 6-101(A) (2), as appearing in 382 Mass. 783 (1981).

Staff Builders had billed Dervan's estate $5,308 for services provided to Dervan in the months preceding her death. Palmer undertook to secure payment of the bill from Dervan's insurer, Blue Cross/Blue Shield (BCBS). BCBS declined coverage of the bill in September, 1986, and, in February, 1987, Palmer commenced suit against BCBS. Palmer's complaint sought judgment in the amount of $3,200, despite the fact that $5,308.80 was due to Staff Builders. In June, 1987, BCBS offered to settle the claim for $1,000. Palmer notified Ward of this offer and Ward advised him that the offer was acceptable. Nevertheless, Palmer did not settle the case. Subsequently, on August 30, 1987, Ward died, leaving her estate to her granddaughter, Janice Ward. Janice Ward retained her own attorney who notified Palmer in November, 1987, that the attorney had authority to settle the case with BCBS. In May, 1988, BCBS raised its settlement offer to $3,000. Ward's attorney again notified Palmer that Janice Ward wished to settle the claim. Palmer responded that Janice Ward's wishes were not his affair, and he continued to pursue the suit in his capacity of executor of Dervan's estate. Subsequently, in October, 1988, Staff Builders, BCBS, and Janice Ward worked out a settlement in which BCBS agreed to pay Staff Builders $3,000, and Janice Ward agreed to pay the balance. Nevertheless, Palmer refused to dismiss his suit against BCBS. He finally did so in June, 1989, after BCBS's attorney threatened to seek sanctions against him unless he could explain what reasonable basis he had for continuing the suit.

2. *Proceedings below*. Bar counsel filed a petition for discipline against Palmer on April 21, 1990, alleging that Palmer had charged an excessive fee in violation of DR 2-106, had filed a false and fraudulent account in violation of DR 1-102(A) (4), (5), and (6), and was negligent in commencing and then failing to pursue the suit against BCBS in violation of DR 6-101(A) (2) and (3).[3] The hearing committee found that Palmer had charged an excessive fee in violation of DR 2-106, but had not violated the other disciplinary rules. The hearing committee recommended that Palmer receive a private reprimand and that he be required to reimburse the estate his entire "executor commission" of $5,203.74, plus interest, as well as an additional $2,742.06, in attorney's fees and interest. Bar counsel and the respondent appealed to an appeal panel of the board. The appeal panel rejected the hearing committee's conclusions that Palmer had not violated any disciplinary rules in filing a false account and in mishan-

---

[3] Rule 3:07 of the Rules of the Supreme Judicial Court, Canon 1, DR 1-102(A), as appearing in 382 Mass. 769 (1981), provides that a lawyer shall not:

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

Rule 3:07 of the Rules of the Supreme Judicial Court, Canon 2, DR 2-106, as appearing in 382 Mass. 770 (1981), provides in part:

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee. . . . "

Rule 3:07 of the Rules of the Supreme Judicial Court, Canon 6, DR 6-101(A), as appearing in 382 Mass. 783 (1981), provides that a lawyer shall not:

"(1)Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

"(2)Handle a legal matter without preparation adequate in the circumstances.

"(3)Neglect a legal matter entrusted to him."

dling the BCBS suit. The appeal panel concluded that, by knowingly misrepresenting material facts in his "First and Final" account, Palmer had violated DR 1-102(A) (4), (5), and (6). The panel also concluded that the numerous errors and misrepresentations in the account supported a finding that Palmer had violated DR 6-101(A) (2) as well.[4] Additionally, the panel concluded that Palmer's failure to sue BCBS for the total amount of the Staff Builders' claim, as well as his failure to pursue the claim diligently, constituted a violation of DR 6-101(A) (2) and (3). Finally, the panel also rejected the hearing committee's recommendation that Palmer receive a private reprimand, and instead recommended that Palmer be publicly censured. In reaching this conclusion, the panel noted that in *Matter of Kerlinsky*, 406 Mass. 67 (1989), this court noted with approval that the ABA Standards For Imposing Lawyer Sanctions, § 7.3 (1986), recommends a public reprimand in cases involving excessive or improper fees. The panel also noted Palmer's prior disciplinary record, and concluded that the appropriate next step in the ladder of discipline was a public censure. See *Matter of Provanzano*, 5 Mass. Att'y Discipline Rep. 300, 304-305 (1987).

On an information from the board, the matter came before a single justice of this court. On September 26, 1991, the single justice, without opinion, entered an order that Palmer be privately reprimanded and be made to pay restitution plus interest. Bar counsel appeals, claiming that public censure was the appropriate sanction in this case. On appeal, neither party contests the facts found by the hearing committee, the panel, or the board.

3. *Discussion.* In reviewing the judgment of the single justice, our inquiry is whether the sanction imposed is "mark-

---

[4]The respondent does not address this finding or the issue of the violation of DR 6-101(A) (2) and (3) in his brief, nor does he contest the finding that the probate account contained inaccuracies and misrepresentations. Rather, he focuses solely on the issue whether the fees charged were excessive and argues that the proper disposition of his case is the imposition of a private reprimand.

edly disparate" from the sanctions imposed by the various single justice in similar cases. *Matter of Knox*, 412 Mass. 569, 570 (1992). *Matter of Alter*, 389 Mass. 153, 156 (1983). In applying this standard, it is appropriate for us to consider the cumulative effect of the several violations committed by the respondent. See *Matter of Saab*, 406 Mass. 315, 326-327 (1989). Viewing the respondent's transgressions in this light, we conclude that the sanction imposed by the single justice was markedly disparate in its leniency.

Our review of the cases reveals that the respondent's conduct in filing a probate account containing inaccuracies and misrepresentations weighs heavily in favor of the imposition of the sanction of public censure. In cases where an attorney has knowingly misrepresented a material fact to a court or to the board, attorneys have received at least a public censure for their misconduct. See *Matter of Nagle*, 6 Mass. Att'y Discipline Rep. 232 (1989) (public censure ordered where respondent mismanaged estate and altered documents provided to bar counsel in subsequent disciplinary investigation); *Matter of Provanzano*, 5 Mass. Att'y Discipline Rep. 300 (1987) (public censure ordered where attorney fabricated evidence for presentation at disciplinary proceeding); *Matter of Kouri*, 4 Mass. Att'y Discipline Rep. 61 (1985) (public censure ordered where attorney commingled funds and filed guardian's account knowing that the account misrepresented a material fact); *Matter of Aronson*, 3 Mass. Att'y Discipline Rep. 12 (1982) (two-year suspension for filing false affidavit in order to collect payment for indigent representation); *Matter of Flannery*, 2 Mass. Att'y Discipline Rep. 76 (1980) (public censure and two-year probation where attorney neglected client's case to the point of nonsuit and then filed false affidavit with board indicating the case had been settled; special mitigating circumstances present). Indeed, we find only two cases involving a misrepresentation by an attorney in which a single justice has ordered a private reprimand rather than a more serious sanction. See *Matter of the Discipline of an Attorney*, 3 Mass. Att'y Discipline Rep. 115 (1983); *Matter of the Discipline of Attorneys A & B*, 2 Mass. Att'y Discipline

Rep. 123 (1981). Both of these cases are distinguishable. In *Matter of the Discipline of Attorneys A & B, supra*, a single justice concluded that public censure was appropriate but unnecessary in light of the fact that the attorneys' names and conduct had already been publicized by a judge of the Housing Court and had been reported in Massachusetts Lawyers Weekly. In *Matter of the Discipline of an Attorney, supra*, the attorney did not make an affirmative misrepresentation to the court; rather, he failed to disclose a material fact of which he was only casually aware, and there were mitigating circumstances present.

In the present case, the respondent misrepresented numerous material facts to the Probate Court by filing a probate account that could well be viewed as being fraudulent, rather than merely inaccurate or rife with misrepresentations. Although we acknowledge the hearing committee's finding that some of the figures included in the account were "accounting device[s]," this finding does not explain all of the inaccuracies of the account. Furthermore, although the practice of filing an account in anticipation of future estate transactions has apparently gained some currency among practitioners, see 2 G. Newhall, Settlement of Estates § 278, at 209 (4th ed. 1958) ("it is not technically proper [although frequently done] to put in Schedule B items not actually paid"), we cannot approve of any practice in which an attorney misleads a court.

Combined with the respondent's conduct in filing a false account is the clearly excessive fee charged in this matter. In certain circumstances the charging of an excessive fee will warrant by itself imposition of a public censure. See *Matter of Kerlinsky*, 406 Mass. 67 (1989). While *Kerlinsky* is distinguishable in that the attorney in that case violated a fee agreement with his client, the respondent in this case was not entirely forthright in collecting his fee. The probate account which accurately listed the respondent's fee contained numerous inaccuracies which prevented the probate judge from assessing the reasonableness of that fee. Moreover, although the hearing committee found that the respondent believed

that Julia Ward's counsel had assented to his fee, the hearing committee also found that the respondent collected his fee by having Julia Ward forward him funds for "administration expenses" and outstanding "bills." Finally, the respondent himself admitted that he was "puzzl[ed]" by the overly generous "executor commission" that he had charged the estate. In such circumstances, the respondent should have scrutinized his charges to ensure that he was not billing the estate twice for the same service: once in his capacity as executor and once in his capacity as attorney. See *Grimes* v. *Perkins Sch. for the Blind*, 22 Mass. App. Ct. 439, 440-441 (1986).

Finally, we consider the respondent's conduct in his mishandling the BCBS suit, as well as his prior disciplinary record. While we do not consider the mishandling of the BCBS suit to be especially egregious, it is an additional factor in our determination of the appropriate sanction in this case. Similarly, although the respondent's prior disciplinary sanction was imposed in 1989, after the conduct involved in the present case had already occurred, the complaint in the prior matter was filed in 1985, putting the respondent on notice, if any was needed, that improper conduct would be met with disciplinary action. Accordingly, it is appropriate to consider the respondent's prior disciplinary record in determining the appropriate sanction to be imposed. See *Matter of Saab*, *supra* at 327.

Weighing these factors together, we believe that the respondent's conduct at least requires public censure. The respondent has not presented any "special" mitigating factors to explain his conduct, see *Matter of Alter*, *supra* at 157. The board has recommended that the respondent be publicly censured. This recommendation is entitled to substantial deference. See *Matter of Alter*, *supra* at 157-158. In this case, we believe that the board's recommendation that the respondent be publicly censured is consistent with the dispositions in similar cases. Accordingly, we reverse the judgment and direct that a judgment be entered in the Supreme Judicial Court for the county of Suffolk ordering a public censure.

The record in this case does not reveal whether restitution has been made as ordered by the single justice. That portion of the order is affirmed. The record in this case is to be unimpounded.

*So ordered.*