IN THE MATTER OF WALTER E. PALMER.

Suffolk. September 5, 1996. - October 2, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Attorney at Law,* Disciplinary proceeding, Disbarment.

The appropriate discipline to be imposed for an attorney's fabricating the existence of two codicils giving him sole control as purported trustee of an estate's assets and his perjury during proceedings challenging the authenticity of the documents is disbarment. [650-651]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 8, 1995.

The case was heard by *Nolan*, J.

The case was submitted on briefs.

*Arnold R. Rosenfeld*, Bar Counsel, & *Nancy E. Kaufman*, Assistant Bar Counsel.

*Earle C. Cooley & John T. Hugo* for the respondent.

GREANEY, J. Based on the conduct that we shall describe shortly, the Board of Bar Overseers (board) recommended that Walter E. Palmer (attorney) be disbarred. On an information filed by bar counsel, a single justice of this court entered a judgment on March 29, 1995, immediately suspending the attorney from the practice of law for a period of four years and ordering the payment of costs. Both bar counsel and the attorney appealed. On December 13, 1995, another single justice modified the judgment to order the attorney to resign from all fiduciary positions. On March 6, 1996, the attorney filed a document withdrawing his appeal from the judgment of suspension and also withdrawing "his opposition to and his right to be heard on the appeal of said . . . judgment by the (board) . . . and [b]ar [c]ounsel seeking his disbarment." We conclude that the attorney should be disbarred.

The pertinent facts found by the hearing committee may be summarized as follows. On May 23, 1972, the attorney was

appointed conservator of the property of Alice Flinn. Flinn died on December 28, 1982. Her will, which the attorney drafted and which Flinn executed on November 14, 1975, left her entire estate to her niece, Lorraine Miller, and nominated the attorney as executor.

At some point after Flinn's death, but before August 5, 1983, the attorney told Miller that the proceeds of her aunt's estate were in a trust created by a codicil to Flinn's will, and that he was named in that codicil as the trustee of the trust. On or about November 1, 1983, Miller and her son met with the attorney in his office, where the attorney gave Miller a document purporting to be the codicil. According to the codicil, the assets of Flinn's estate were to be administered by the attorney, as trustee, during Miller's life.

As of June, 1984, the attorney had filed neither the codicil with the Probate and Family Court nor a petition to allow the codicil containing the trust (and presumably the will) and to appoint him as trustee. On or about June 29, 1984, Miller's attorney, Stephen K. Fischer, wrote to the attorney asserting that the attorney could not properly act as trustee of a testamentary trust where the will and codicil had never been presented to, or allowed by, the Probate and Family Court. At that time, the attorney produced a second codicil that created a trust for the life of Miller plus twenty-one years and named the attorney as trustee. Fischer made a written demand upon the attorney to acknowledge the invalidity of the trust purportedly established by the codicil and to make final distribution of the estate assets to Miller. On August 3, 1984, Fischer again made a written demand on the attorney to distribute the estate assets to Miller. Fischer warned the attorney that, if he persisted in maintaining the existence of the trust, he would present a challenge on the basis that Flinn's signature on the codicil was a forgery or that Flinn was not competent to create a trust on the date the codicil was signed.

On August 13, 1984, the attorney wrote and explained to Fischer that it was his intention to carry out Flinn's wishes, and, if necessary, the attorney would defend his position in court. The attorney also indicated that he would be filing the "original" codicil (the one lasting for the life of Miller plus twenty-one years) with the Probate and Family Court. The attorney then filed a petition with the Probate and Family Court "to prove and allow [the] codicil." In that petition, the

attorney falsely claimed under oath that the codicil was signed on November 15, 1975, by Flinn and by himself, his sister, and his secretary as witnesses. The attorney knew, however, when he filed the petition that the codicil had not been properly authenticated in November, 1975.

Fischer filed an opposition to the attorney's petition, and on December 11, 1984, he also filed another written demand upon the attorney to distribute to Miller all funds due her under Flinn's will or to explain the standards by which the attorney proposed to administer the "trust." The attorney refused to turn over any funds of the estate and asserted that to do so would violate the terms of the trust.

Fischer then deposed the attorney who testified under oath that the document he had filed with the Probate and Family Court as Flinn's codicil was the same document that she had signed and he had witnessed on November 15, 1975. The attorney's sister and his secretary also testified in depositions that the document filed in the Probate and Family Court was the one that Flinn had signed and they had witnessed on November 15, 1975.

In April, 1985, Fischer produced an affidavit of the plant manager for the Southworth Company, the manufacturer of the paper on which the codicil on file with the Probate and Family Court had been typed. According to this affidavit, the watermark on each page of the codicil conclusively established that the paper containing the codicil (which the attorney had stated under oath had been signed on November 15, 1975), had not been manufactured before 1982. Thereafter, the attorney abandoned his attempt to have the codicil containing the testamentary trust allowed by the Probate and Family Court.

The board accepted the hearing committee's findings of fact as supported by the evidence, together with reasonable inferences that could be drawn therefrom, and found additionally that "there never was a codicil executed by Flinn on November 15, 1975, and that, as a consequence, no testamentary trust was created naming the [attorney] as trustee." The board rejected the hearing committee's recommendation that the attorney be suspended for five years (with certain other stipulations) and instead recommended the attorney's disbarment. The board based its recommendation of disbarment on the attorney's fabrication of the codicil, his

perjury during the Probate and Family Court proceedings and a deposition, the falsification of Flinn's signature, and his commission of a fraud on both his client's beneficiary and on the Probate and Family Court.

There can be no doubt that disbarment is called for. The attorney fabricated the existence of two different codicils, both of which gave him sole control, as purported trustee, of an estate's assets. When pressed by Miller's lawyer to file the codicil with the Probate and Family Court, the attorney sought to prove and allow a false codicil which gave him control of the estate for twenty-one years beyond the life of Miller, swearing under oath to the Probate and Family Court that the document on file was the original signed by Flinn and by him and other witnesses on November 15, 1975.

The attorney then committed perjury in a deposition taken by Miller's lawyer in the course of proceedings challenging the authenticity of the purported codicil. In that deposition, the attorney again swore that the document on file with the Probate and Family Court was the original codicil signed by Flinn and the witnesses in 1975, when the document had in fact been fabricated on a much later date. The attorney did not abandon his claim concerning the purported codicil until irrefutable proof was produced showing that the document filed with the Probate and Family Court could not possibly be genuine. The hearing committee found that the attorney did all this in order to give "himself sole and unrestricted authority over the substantial assets of the estate not only for the life of the heir but for twenty-one years thereafter. He thereby virtually assured himself of total control over the funds of the estate until they were exhausted."

The attorney's serious and documented perjury by itself could justify his disbarment. See *Matter of Sleeper*, 251 Mass. 6, 20 (1925) ("It requires no discussion to demonstrate that the commission of perjury by an attorney at law is sufficient ground for disbarment"). The case is made much worse, however, by the fact that the perjury occurred in furtherance of a larger corrupt scheme involving fraud on an innocent beneficiary and on the Probate and Family Court, which the attorney (who has been disciplined before for misconduct in

connection with estates[1] ) stubbornly pursued for self-benefit until he was caught red-handed.

Evidence about the attorney's good character and reputation in the community furnishes no mitigation in light of his previous public censure, see *Matter of Palmer*, 413 Mass. 33, 40 (1992), and he likewise is not helped by his asserted advanced age, see *Matter of Luongo*, 416 Mass. 308, 311-312 (1993).[2]

The judgment, as modified, is amended to strike therefrom the provision suspending the attorney from the practice of law for a period of four years. That provision is to be replaced by an order disbarring the attorney from the practice of law in the Commonwealth retroactive to March 29, 1995. The other provisions of the modified judgment are affirmed.

*So ordered.*

---

[1] The attorney received a private reprimand in 1989 for neglect and failure to pay estate taxes in connection with his representation of an elderly executrix in the handling of her late husband's estate. See *Private Reprimand No. 89-15*, 6 Mass. Att'y Discipline Rep. 365 (1989). The attorney was publicly censured for charging a clearly excessive fee and for inadequate work in connection with his duties as the executor of an estate whose sole beneficiary was the testator's ninety-two year old mother. See *Matter of Palmer*, 413 Mass. 33 (1992). Bar counsel points out, we think with justification, that the attorney's professional misconduct just noted, and as described in this case, involves a pattern of gross impositions on older women who appear to have been in "a particularly vulnerable condition."

[2] We briefly mention only one concern: the attorney's claim that the action of the board violated § 2.5 (1) of the Rules of the Board of Bar Overseers (1996), which generally limits action on "any grievance . . . arising out of acts or omissions occurring more than six years prior to the date of the grievance." The attorney's misconduct continued until June, 1985, when he formally renounced the codicil. According to bar counsel, a grievance against the attorney concerning this estate had been filed on May 16, 1991. Thus, the matter was not stale when bar counsel began his investigation, and the provisions of § 2.5 (1) were not violated.