## IN THE MATTER OF ALAN J. KARAHALIS.

Suffolk. December 10, 1998. - March 4, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension.

In a proceeding for discipline of an attorney, a suspension from the practice of law for a period of four years was the appropriate discipline to be imposed for the attorney's bribery of a public official, where the attorney had a prior disciplinary record but where there were mitigating circumstances and the attorney had not been convicted of a crime. [121-125] LYNCH J., concurring.

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on August 25, 1997.

The case was heard by *Ireland, J.*

*Terry Philip Segal* for the respondent.

*Arnold R. Rosenfeld,* Bar Counsel.

LYNCH, J. This is an appeal from an order of a single justice of this court, acting on an information filed by the Board of Bar Overseers (board), suspending Alan J. Karahalis (respondent), from the practice of law for two years. Both the respondent and the bar counsel appealed from the judgment of suspension.

In November, 1995, bar counsel filed a petition for discipline against the respondent, alleging violations of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981) (engaging in conduct that is prejudicial to the administration of justice), and S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981) (engaging in any other conduct that adversely reflects on his fitness to practice law).[1] The petition alleged that the respondent made payments of $12,000 to Nicholas Mavroules, a United States Congressman, for the purpose of inducing him to act in violation of

---

[1]The former Canons of Ethics and Disciplinary Rules have been replaced by the Massachusetts Rules of Professional Conduct which became effective January 1, 1998. S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998) (Massachusetts Rules of Professional Conduct).

Federal law. The respondent's motion to dismiss on the basis of staleness was denied by the board.[2] On May 30, 1996, and August 14, 1996, a hearing committee (committee) of the board conducted an evidentiary hearing and subsequently recommended that the respondent be suspended from the practice of law for a period of four years. The respondent appealed and the board adopted the committee's findings but recommended that the respondent be suspended for a period of two years. A single justice of this court agreed and imposed a two-year suspension.

1. *Facts as found by hearing committee.* In 1985, Andrew and Deborah Gerakaris approached the respondent and suggested that the respondent's uncle, who was in the Federal prison system, could be moved to a more convenient location if several thousand dollars were paid to Congressman Mavroules.[3] The respondent raised the money from his family and personally delivered $7,000 to Mavroules in August of 1985. As a result of a conversation with Mavroules, the respondent delivered an additional $5,000 to Andrew Gerakaris in September of 1985.

The respondent knew that the purpose of these payments was to induce a public official to utilize his official position in facilitating the transfer of the respondent's uncle to a prison in

---

[2]The respondent argues that the complaint was stale and should have been dismissed. Section 2.5 of the Rules of the Board of Bar Overseers (1985) provides:

> "Except where the Bar Counsel or the Board determines otherwise for good cause, the Bar Counsel or the Board shall not entertain any grievance . . . arising out of acts or omissions occurring more than six years prior to the date of the grievance . . . ."

In the present case, the misconduct was not discovered until 1992, and the Federal prosecution of Congressman Mavroules was not completed until 1993. The petition for discipline was filed with the board on November 30, 1995. The matter was subsequently approved for formal prosecution by a board member on January 17, 1996. The respondent's contention that the complaint was stale because bar counsel failed to demonstrate good cause for delay is without merit. See *Matter of Abagis*, 386 Mass. 1001, 1001 (1982) (delay due to civil litigation pending was implicitly "good cause" and therefore timely); *Matter of Kipp*, 383 Mass. 869, 870 (1981) (relevant inquiry is whether complaints were timely prosecuted after discovery).

[3]Deborah Gerakaris is Mavroules's daughter. Prior to 1985, the respondent's uncle, who resided in Florida, had been convicted of felony drug charges and was assigned to a Federal prison in Danbury, Connecticut. This assignment was inconvenient because it was difficult for the family, who lived in Florida, to visit him.

Florida, which the respondent knew was illegal. The respondent's uncle was subsequently transferred to a minimum security facility in Florida, but not because of the bribe.

In referring the matter to the board, the office of the United States Attorney noted the respondent's complete cooperation and assistance in the prosecution of Mavroules. The respondent was neither convicted nor even charged with any criminal violations as a result of his conduct. Mavroules pleaded guilty to a multi-count indictment, including one count relating to the extortion of $12,000 from the respondent's family to influence the transfer of the respondent's uncle.

2. *Appropriate discipline.* In reviewing the judgment of the single justice, we inquire "whether the sanction imposed is markedly disparate from sanctions imposed in similar cases." *Matter of Chambers*, 421 Mass. 256, 259 (1995), quoting *Matter of Garabedian*, 416 Mass. 20, 24 (1993). "In selecting a sanction, we should consider its effect on, and the perception by, the public and its deterrent effect on other lawyers contemplating similar conduct." *Matter of Kennedy*, 428 Mass. 156, 158 (1998). "In applying this standard, it is appropriate for us to consider the cumulative effect of the several violations committed by the respondent." *Matter of Palmer*, 413 Mass. 33, 38 (1992), citing *Matter of Saab*, 406 Mass. 315, 326-327 (1989). We are mindful that the recommendation of the board is entitled to substantial deference. See *Matter of Palmer, supra* at 40; *Matter of Alter*, 389 Mass. 153, 157-158 (1983).

In cases where an attorney has engaged in conduct similar to the respondent's, the sanction imposed has often resulted in indefinite suspension. In *Matter of O'Donnell*, 5 Mass. Att'y Discipline Rep. 279 (1987), an indefinite suspension was imposed on an attorney who was convicted of violating the Travel Act, 18 U.S.C. §§ 371, 1952, where the attempt to bribe the public official occurred out of State, in violation of G. L. c. 268A, § 2.[4] Similarly, in *Matter of Latour*, 4 Mass. Att'y Discipline Rep. 63, 66 (1984), a single justice imposed an

---

[4]The respondent in that case was also indicted for wrongfully conspiring to travel in interstate commerce and to use wire and telephone facilities to promote, carry on, and facilitate bribery, in violation of G. L. c. 268A, § 2. The indictment charged that there was a direct or indirect corrupt giving, offering, or promising of $50,000 to a selectman to influence his vote for the purposes of securing a cable television license for the respondent's client. *Matter of O'Donnell*, 5 Mass. Att'y Discipline Rep. 279 (1987).

indefinite suspension where the attorney was convicted of bribery and noted that "[p]ublic confidence in the integrity of the legal profession and its practitioners could not be more severely undermined than by the specter of attorneys attempting to attain their objectives by bribing public officials." *Id.* In *Matter of Tatel*, 4 Mass. Att'y Discipline Rep. 138 (1984), an indefinite suspension was found to be the appropriate sanction where the respondent was convicted of three misdemeanor violations of G. L. c. 268A, § 3 (*a*), which prohibits giving anything of value to a government employee for an official act. Most recently in *Matter of Pressman*, 421 Mass. 514 (1995), an attorney was disbarred even though he was not convicted, where he admitted to a Federal grand jury that he took bribes while serving as mayor. See *Matter of Schoening*, 2 Mass. Att'y Discipline Rep. 182 (1981) (three-year suspension where attorney convicted of bribery and substantial mitigation found); *Matter of Della Grotte*, 2 Mass. Att'y Discipline Rep. 61 (1980) (four-year suspension where attorney convicted of bribery and substantial mitigation found).

Both parties contest the board's reliance on *Matter of De-Marco*, 5 Mass. Att'y Discipline Rep. 94 (1987), as guidance for determining the appropriate sanction in the present case. In *Matter of DeMarco, supra,* a single justice imposed a two-year suspension on an attorney who was a principal in a cable company and was aware his agent bribed a public official but took no action to reveal or to correct the fraud. Although this case is similar to *Matter of DeMarco, supra,* the respondent's conduct was more egregious in that he actively participated in the bribery. In addition, the respondent has a history of misconduct.[5] In 1985, the respondent received a private reprimand for commingling and misuse of a client's funds during 1983. Private Reprimand No. PR-85-13, 4 Mass. Att'y Discipline Rep. 243 (1985). In 1991, the respondent also

---

[5]The hearing committee disregarded the respondent's disciplinary history, stating that these prior decisions were procedural and administrative in nature. The board properly concluded that the committee erred, and noted that prior discipline should be a factor in determining the appropriate sanction. The primary factor for consideration in matters of bar discipline is the effect on and the perception of the public and the bar. *Matter of Alter*, 389 Mass. 153, 156 (1983). Accordingly, it is appropriate to consider the respondent's disciplinary record in determining the appropriate sanction to be imposed without regard to when the infractions occurred. See *Matter of Palmer*, 413 Mass. 33, 40 (1992), citing *Matter of Saab*, 406 Mass. 315, 327 (1989).

received a public censure for commingling client and personal funds, advancing settlement funds to clients before receipt of their checks, and failing to pay medical providers promptly, all occurring in 1989. *Matter of Karahalis*, 7 Mass. Att'y Discipline Rep. 130 (1991).

However, we are cognizant of mitigating factors in this case. The respondent fully cooperated with the office of the United States Attorney in the prosecution of Mavroules. The respondent's illegal actions were motivated by his desire to help a family member, rather than for his own pecuniary interests. Moreover, the respondent was not convicted of any crime relating to this matter. See *Matter of Alter, supra* at 155 (these circumstances do not implicate court's "special concern for the public interest when an attorney has been convicted of a serious crime").

Nevertheless, we conclude that the committee's recommendation that the respondent be suspended from the practice of law for a period of four years is consistent with sanctions imposed in similar cases. Accordingly, we vacate the judgment ordering a two-year suspension and direct that a judgment suspending the respondent from the practice of law for a period of four years be entered.

*So ordered.*

LYNCH, J. (concurring). Although I join the court in imposing a four-year suspension in this case, I believe the two-year suspension recommended by the board and imposed by the single justice is more appropriate. The two-year suspension takes into consideration the deference due the board, the recommendation of the United States Attorney, the fact that no criminal sanctions were imposed on the respondent, that this was more a case of extortion than bribery, that the respondent was motivated by family loyalty rather than pecuniary gain, that ten years elapsed from the events to the time of prosecution, and that the impetus behind the fraudulent scheme came from Congressman Mavroules and his family.