PARIENTE, J.
dissenting.
I respectfully dissent from the decision to disbar Alan John Karahalis. The actions for which this Court now disbars Karahalis occurred in Massachusetts in 1985. The disciplinary proceedings in Massachusetts that arose from this same misconduct resulted not in disbarment, but in a four-year suspension from the practice of law retroactive to October 24, 1997.[3] See In re Karahalis, 429 Mass. 121, 706 N.E.2d 655 (1999).
Although the Massachusetts Supreme Judicial Court considered an indefinite suspension, that Court distinguished the facts of this case from other cases of bribery. See id. at 657. In so doing, the Court was especially “cognizant of mitigating factors in this case” including the fact that Karahalis “fully cooperated with the office of the United States Attorney in the prosecution of [U.S. Congressman Nicholas] Mavroules” and that Karahalis’s “illegal actions were motivated by his desire to help a family member, rather than for his own pecuniary interests.” Id. at 658. Justice Lynch elaborated on these mitigating factors in a concurring opinion in which he found that a two-year suspension, as recommended by the Board of Bar Overseers, was even more appropriate than the four-year suspension:
The two-year suspension takes into consideration the deference due the board, the recommendation of the United States Attorney, the fact that no criminal sanctions were imposed on the respondent, that this was more a case of extortion than bribery, that the respondent was motivated by family loyalty rather than pecuniary gain, that ten years elapsed from the events to the time of prosecution, and that the impetus behind the fraudulent scheme came from Congressman Mavroules and his family.
Id. at 658. In addition, it appears from a review of the opinion that the Massachusetts judiciary looks to factors similar to those employed by this Court in evaluating the appropriateness of discipline. See generally id. at 657-58.
I certainly recognize that this Court is not bound to follow the discipline imposed by the Massachusetts Supreme Judicial Court. However, in contrast to the proceedings in Massachusetts in which testimony was taken and evaluated, the referee in this case made a recommendation of disbarment based solely on a cold record. I do not state this as a criticism, but merely as an indication of the superior vantage point of those in Massachusetts who evaluated this ease and did not recommend disbarment.
*31 Consequently, I am persuaded that in this case we should follow the lead of the Massachusetts Supreme Judicial Court and impose a four-year suspension rather than disbarment, especially given the facts that the misconduct occurred over fifteen years ago in Massachusetts; that the misconduct did not result in criminal charges; that the respondent fully cooperated with the United States Attorney in the prosecution of Congressman Mavroules; and that the respondent was motivated by family loyalty and not by financial gain.
Additionally, although I fully agree that the conduct in which Karahalis participated was reprehensible, in my opinion we should discount as an aggravating factor Karahalis’s substantial experience in the practice of law. At the time that these events occurred, Karahalis had been a member of The Florida Bar for only three years.
Accordingly, for all these reasons and given the circumstances of this case, I find that disbarment is too harsh a punishment. Instead, I would follow the lead of the Massachusetts Supreme Judicial Court and suspend Karahalis from the practice of law for four years, which is a significant and severe sanction.
QUINCE, J., concurs.

. The facts of this case, as determined by the Massachusetts hearing committee, are that Karahalis was approached in 1985 by Andrew and Deborah Gerakaris. See In re Karahalis, 706 N.E.2d at 656. Deborah Gerakaris is Congressman Mavroules's daughter. See id. at 656 n. 3. The Gerakarises suggested that Karahalis's uncle, who was in the federal prison system, could be moved to a more convenient location if several thousand dollars were paid to Congressman Mavroules. See id. at 656. Karahalis's uncle, who resided in Florida, had been convicted of felony drug charges and was assigned to a federal prison in Danbury, Connecticut. See id. at 656 n. 3. "This assignment was inconvenient because it was difficult for the family, who lived in Florida, to visit him.” Id.
Karahalis raised money from his family and personally delivered $7000 to Congressman Mavroules in August of 1985. See id. at 656. As a result of a conversation with Mavroules, Karahalis delivered an additional $5000 to Andrew Gerakaris in September of 1985. See id. Ultimately, Karahalis’s uncle was transferred to a minimum security facility in Florida but not because of the bribe. See id.