Fahey, J.
The plaintiff, Attorney Judith Nathanson, (“Nathanson”), seeks judicial review of a decision and order rendered by a Commissioner of the Massachusetts Commission Against Discrimination (“MCAD”), which was subsequently adopted by the full Commission. The order required Nathanson to cease and desist her discriminatory practices in refusing to represent men in her legal practice. For the reasons stated herein, the plaintiffs motion for judgment on the pleadings is denied and the MCAD decision is affirmed.
I. Facts
Joseph Stropnicky filed a complaint with MCAD against Attorney Nathanson for gender discrimination in a place of public accommodation in violation of G.L.c. 272, §98. Specifically, Stropnicky alleged that Attorney Nathanson excluded him from her legal practice and declined to represent him in his divorce proceedings because Nathanson only represents women in her divorce practice. Although she advertises to the general public via the white and yellow pages and local newspapers, Nathanson, desiring to ameliorate the impact of divorce on females, limits her divorce practice to representing women. Nathanson is forthcoming, and candidly admits that her reason for refusing to represent Stropnicky is because his gender interferes with or precludes her ability to provide him zealous legal representation.[1]
Pursuant to G.L.c. 151B, §5, an Investigating Commissioner found probable cause to credit the allegations, and after conciliation efforts failed, a hearing was held before Hearing Commissioner Charles Walker. On February 25, 1997, the Hearing Commissioner issued his decision that Nathanson had engaged in gender discrimination in violation of G.L.c. 272, §98. The Full Commission of the MCAD affirmed the decision on July 26, 1999.
On August 25, 1999, Nathanson filed the instant action in Superior Court, seeking relief pursuant to G.L.c. 30A, §14 and G.L.c. 151B, §6.
II. Standard of Review
G.L.c. 30A, §14 grants any person or entity who is aggrieved by a decision of any agency in an adjudicatory proceeding the right to appeal that decision to the Superior Court. This court may reverse or modify the agency decision “if it determines that the substantial rights of any party may have been prejudiced” because the decision is “unsupported by substantial evidence,” or is “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, § 14(7). When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id.
*762 The party appealing an administrative decision pursuant to G.L.c. 30A, §14 bears the burden of demonstrating the invalidity of that decision. Merisme v. Bd. of Appeals on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). Unless irregularities in the procedure before the agency are alleged, a court’s review of an agency decision is confined to the administrative record. G.L.c. 304, §14(5). Judicial review of an agency decision is circumscribed. Lisbon v. Contributory Retirement Appeals Bd., 41 Mass.App.Ct. 246, 259 (1996). A court reviewing an agency decision must be deferential to the agency. Flint v. Comm’r of Pub. Welfare, 412 Mass. 416, 420 (1992). The test on appeal from a decision of the MCAD is whether there is substantial evidence to support the order of the Commission. Katz v. Massachusetts Comm’n. Against Discrimination, 365 Mass. 357, 365 (1974). Under G.L.c. 30A, §1, “ ‘substantial evidence’ means such evidence as a reasonable mind might accept as adequate to support a conclusion.”
“If [an] agency has, in the discretionaiy exercise of its expertise, made a ‘choice between two fairly conflicting views,’ and its selection reflects reasonable evidence, [a] court may not displace [the agency’s] choice . . . even though the court would justifiably have made a different choice had the matter been before it de novo.” Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996) (citations omitted).
III. Discussion
A. Whether the Commission Erred in Asserting Jurisdiction
Arguing that the Commission erred in asserting jurisdiction over Stropnicky’s claims, Nathanson claims that issues pertaining to her behavior as an attorney are within the exclusive jurisdiction of the Supreme Judicial Court and the Board of Bar Overseers. In 1991, when the alleged discriminatory conduct occurred, the Massachusetts Canons of Ethics and Disciplinaiy Rules, as set forth in S.J.C. Rule 3:07, were in effect. The Canons were replaced by the Massachusetts Rules of Professional Conduct in 1998. See S.J.C. Rule 3:07.
The Massachusetts Canons of Ethics and Disciplinary Rules, in effect at the time of the alleged discriminatory conduct, provide that “[t]he practice of law by members of the Massachusetts Bar shall be regulated by the Canons of Ethics and Disciplinary Rules attached hereto and incorporated by reference herein.” S.J.C. Rule 3:07 (Introduction) (emphasis added).[2] While the Supreme Judicial Court and Board of Bar Overseers do have jurisdiction over Nathanson’s conduct as a member of the bar, this jurisdiction is not exclusive. In determining whether the SJC jurisdiction is exclusive, this court is mindful both that there is nothing in the SJC Rules’ language that speaks of exclusivity of said regulation and also that there are numerous other circumstances where the SJC has at least implied that jurisdiction is not exclusive. Attorneys are subject to the same penalties and liabilities as any member of the public for failing to act in conformity with the law. See Robertson v. Snow, 404 Mass. 515, 523 (1989) (recognizing attorney may be civilly sued in tort for negligent representation); see also In Re Karahalis, 429 Mass. 121, 123 (1999) (recognizing attorney criminally liable for violating federal law); Fishman v. Brooks, 396 Mass. 643, 649 (1986) (noting attorney’s violation of canon of ethics or disciplinaiy rule may be evidence for asserting civil malpractice claim against attorney). For these reasons, the Commission did not err in asserting jurisdiction over Stropnicky’s claim.
Nathanson makes the additional argument that, under the 1991 rules and under the rules in effect today, an attorney must represent her clients zealously, and Nathanson’s commitment to representing women in divorce proceedings precludes her from advocating zealously on behalf of men. It is certainly true that Nathanson had a duty to represent her clients zealously at the time of the alleged discriminatoiy conduct. S.J.C. Rule 3:07, Canon 7 (“A Lawyer Should Represent a Client Zealously Within the Bounds of the Law”).[3] While an attorney’s ability to advocate zealously for a client is a relevant consideration in determining whether an attorney is legally required to provide representation, it is not permissible for an attorney to assert a discriminatory agenda as grounds that she is unable to advocate zealously for a client. This is because an attorney is required to adhere to and follow the law. S.J.C. Rule 3:07, Canon 1 (“A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession”); see In Re Karahalis, 429 Mass. 121, 123 (1999) (holding attorney accused of illegal conduct in 1995 responsible under Canons for “engaging in conduct that is prejudicial to the administration of justice” and for “engaging in any other conduct that adversely reflects on his fitness to practice law”).[4] Nathanson’s belief, that her advocacy on behalf of women in divorce would be undermined should she take on a male client, cannot be countenanced.[5] Nathanson’s claim that she was devoting her professional expertise to “the betterment of a disadvantaged protected class,” “women in divorce proceedings” (Nathanson’s motion atp. 13), cannot be supported when the male she declines to represent is similarly situated to many of Nathanson’s female clients.[6] Nathanson’s ethical obligations as an attorney licensed to practice law in this Commonwealth require that she uphold the law in her practice. As an officer of the court, she, as a lawyer, is prohibited from practicing discrimination such as the discrimination at issue in the instant case.
B. Whether Nathanson Provides Services Within the Meaning of G.L.c. 151B, §4, ¶14.
As a ground why the MCAD decision should be reversed, Nathanson claims that the Commission er *763 roneously relied on G.L.c. 151B, §4, ¶14. G.L.c. 151B, §4, ¶14 states that “[i]t shall be an unlawful practice . . . [f]or any person furnishing credit or services to deny or terminate such credit or services . . . because of such individual’s sex . . .” G.L.c. 151B, §4,¶14. Stropnicky argues that Nathanson has violated G.L.c. 15 IB, §4, ¶14 because she has discriminated against Stropnicky based on his gender by denying him “services.” Stropnicky’s contention is incorrect. G.L.c. 151B, §4, ¶14 focuses solely on credit services, which are not in any way involved in this case. Stropnicky’s argument that this statute applies to the facts of this case is misplaced; portions of a statute cannot be read out of context. Sullivan v. Town of Brookline, 435 Mass. 353, 360 (2001). Accordingly, G.L.c. 151B, §4, ¶14 is not a basis for the Commission’s decision.
C. Whether a Law Office Is a Place of Public Accommodation
As an additional ground why the MCAD decision should be reversed, Nathanson argues that G.L.c. 272, §98 does not apply. Under G.L.c. 272, §98, discrimination on the basis of gender is prohibited in any place of public accommodation.[7] G.L.c. 272, §92A defines a place of public accommodation as “any place, whether licensed or unlicensed, which is open to and accepts and solicits the patronage of the general public . . .” The statute subsequently lists a number of establishments and places which are included in the definition, but also states that these examples are to be read “without limiting the generality of this definition.” G.L.c. 272, §92A.
Plaintiff Nathanson argues that a law office is not a place of public accommodation, because a law office has unique characteristics which distinguish it from the examples listed in the statute. Nathanson asserts that if the special character of the attorney-client relationship were intended to be included in the scope of the statute’s protections, it would have been stated explicitly in the statutory list of examples. This court declines to adopt her view, as the statute, specifically non-exhaustive in its listing, lists establishments which offer services to the public, and which are easily comparable to services offered by a law office.
The supplementary examples that have been determined by the case law also mandate the conclusion that a law office, like many other places of business, is a place of public accommodation. Local Finance Co. of Rockland v. Massachusetts Comm’n Against Discrimination, 355 Mass. 10, 15 (1968) (loan company is place of public accommodation). While of no precedential value, other MCAD cases have produced similar results. Lumley v Flynn, 5 MDLR 1031 (1983) (taxicab service is place of public accommodation); King v. Hanover Ins. Co., 2 MDLR 1429 (1981) (insurance company is place of public accommodation). Case law that similarly characterizes establishments with a less palpably public character is especially persuasive. Concord Rod & Gun Club, Inc. v. Massachusetts Comm’n Against Discrimination, 402 Mass. 716, 721 (1988) (gun and sportsman club place of public accommodation because there was “total absence of genuine selectivity in membership”);[8] compare Donaldson v. Farrakhan, 436 Mass. 94, 102 (2002) (city owned theatre for mosque-sponsored religious meeting not place of public accommodation).
The Americans with Disabilities Act (ADA) is a statute with objectives similar to those of G.L.c. 272, §98. 24 U.S.C. §12101-212. It is thus appropriate to look to the ADA, and decisions interpreting it, for guidance when interpreting the provisions of the Massachusetts Public Accommodation statute. Lesley v. Hee Man Chie, 250 F.3d 47, 58 n. 17 (2001) (noting “interpretation of state disability laws goes ‘hand in hand’ with interpretation of the federal disability-laws”), citing Abbott v. Bragdon, 107 F.3d 934, 937 n. 1 (1st Cir. 1997) (noting ADA and Massachusetts Public Accommodation Act to be treated similarly and noting dentist’s office is place of public accommodation), aff'd in part, rev’d in part, 524 U.S. 624 (1998) (dentist’s office is place of public accommodation) (citations omitted). Under the ADA, a law office is specifically listed as a place of public accommodation. 24 U.S.C. §12101-212; See Carparts Distribution Cent., Inc., v. Automotive Wholesaler’s Assoc. of New England, Inc., 37 F.3d 12, 19 (Vt.Cir. 1994) (ADA’s illustrative list of places of public accommodation includes “office of a [ ] lawyer”); Bragdon v. Abbott, 524 U.S. 623, 629 (1998) (dentist’s office is place of public accommodation under ADA). Based on these cases, and with no decision to the contrary cited by either party or uncovered by this court’s research, this court is satisfied that, on the facts presented here, an attorney with a private legal office who advertises to the public must abide by the law and not discriminate on the basis of gender. This conclusion is particularly warranted because attorneys are licensed by the state, are trained to bring claims that protect the individual as well as the public’s rights, and are considered “officer[s] of the legal system.” S.J.C. Rule 3:07 (Preamble). As noted above, clubs and other entities that have a much less public character than the provision of legal services, in that they are nonselective and also less easily established as public, have been nevertheless characterized by the courts as places of public accommodation. See Concord Rod & Gun Club, 402 Mass. at 721. Based on this reasoning, the MCAD decision is correct unless affirming it would unreasonably interfere with Attorney Nathanson’s First Amendment rights.
D. Whether Nathansoris First Amendment Rights Are Abridged by Application of the Statute
Nathansoris final argument against the MCAD’s decision is that her exclusion of male clients in her divorce practice is constitutionally protected free speech and free association.
*764 1. Free Association
Nathanson argues that her right to free association will be infringed if she is forced to represent Stropnicky. Rights to free association are delineated in “two distinct senses”; first, there is a right “to enter into and maintain certain intimate human relationships,” and, second, there is a “right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion.” Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). An association must be sufficiently selective or exclusive to impair Nathanson’s rights to intimate association. Bd. of Dirs. of Rotary Int’l v. Rotary Club, 481 U.S. 537, 546 (1987) (noting rights to intimate association dependent on factors such as “size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship”); see also Jaycees, 468 U.S. at 620 (relevant factors may be “size, purpose, policies, selectivity, congeniality, and other characteristics . . .”). Nathanson does not argue that she uses any particular criteria to select her clients, and in fact admits that she refused to represent Stropnicky for no reason other than his gender. The relationship between Nathanson and her clients “is not the kind of intimate or private relation that warrants constitutional protection.” Rotary Club, 481 U.S. at 546.
A more difficult question concerns whether application of the statute infringes Nathansoris rights to expressive association. A statute infringes rights to free expressive association when it affects, in a “significant way,” the ability of individuals to form associations that advocate public or private viewpoints. Boy Scouts of America v. Dale, 530 U.S. 640, 648 (2000); Rotary Club, 481 U.S. at 548 (holding application of New York public accommodation statute did not infringe Rotaiy Club’s rights to expressive association because Club does not take positions on “public questions” and application of statute would not affect basic goals of Club); New York State Club Ass’n, Inc. v. City of New York, 487 U.S. 1, 13 (1988) (“[i]f a club seeks to exclude individuals who do not share the views that the club’s members wish to promote, the [statute] erects no obstacle to this end. Instead, the [statute] merely prevents an association from using .. . sex . .. as [a] shorthand measure! ] in place of what the city considers to be more legitimate criteria for determining membership.”). Assuming the type of associations and relationships protected by the First Amendment are applicable to the “association” that is formed when an attorney represents a client, Nathanson’s duty to represent Stropnicky under the Massachusetts Public Accommodations Statute does not compromise her ability to advocate her viewpoints or her ability to accomplish her purposes. As noted above, Stropnicky represents the same interests as the women that Nathanson typically represents in divorce proceedings.
Further, assuming arguendo that requiring Nathanson to represent Stropnicky infringes her rights to free association, these rights are subordinate to “regulations adopted to serve compelling state interests.” Jaycees, 468 U.S. at 623; Rotary Club, 481 U.S. at 549 (“Even if the [statute] does work some slight infringement on Rotaiy members’ right of expressive association, that infringement is justified because it serves the State’s compelling interest in eliminating discrimination against women”). Statutes enacted for purposes of abating discrimination, such as the Massachusetts Public Accommodation statute, serve compelling state interests. Jaycees, 468 U.S. at 624-26; Rotary Club, 481 U.S. at 549; New York State Club Ass’n, 487 U.S. at 11-16. Accordingly, Nathanson’s free association rights are not outweighed by society’s interest in non-discrimination in this case.
2. Free Speech
An attorney may advocate for a client and concurrently engage in constitutionally protected free speech. Burley v. Irish-American Gay Group, 515 U.S. 557, 569 (1995) (“a private speaker does not forfeit constitutional protection simply by combining multifarious voices, or by failing to edit their themes to isolate an exact message as the exclusive subject matter of the speech”); Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 636 (1994) (acknowledging cable operators engaged in speech protected by First Amendment); Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 258 (1974) (stating newspaper “more than a passive receptacle or conduit” and that newspaper engages in protected free speech activities); see also Thornton v. Breland, 441 So.2d 1348, 1350 (1983) (noting lawyer’s speech implicates free speech rights). Nevertheless, the right to free speech is not absolute and will be forfeited to a compelling state interest. Jaycees, 468 U.S. at 623 (“infringements on [the right to associate for expressive purposes] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms”); Rotary Club, 481 U.S. at 549 (“even if the [Public Accommodation Statute] does work some slight infringement on Rotaiy members’ right of expressive association, that infringement is justified because it serves the State’s compelling interest in eliminating discrimination against women”); Barnes v. Glen Theatre, Inc., 501 U.S. 560, 567 (1991) (upholding state statute prohibiting nudity and nude dancing in “place of public accommodation,” despite potential interference with free speech, because it furthers “substantial” or “compelling” government interests).
The Commonwealth’s compelling interest in abating gender discrimination outweighs Nathanson’s constitutionally protected right to free speech in her capacity as a private attorney.[9] The Massachusetts *765 Public Accommodation statute seeks to eliminate discrimination, including discrimination on the basis of gender, and “does not, on its face, target speech or discriminate on the basis of its content, the focal point of its prohibition being rather on the act of discriminating against individuals in the provision of publicly available goods, privileges, and services on the proscribed grounds.” Hurley, 515 U.S. at 503 (interpreting G.L.c. 272, §98). Statutes which aim to quell discrimination against women and other groups have been upheld because they serve compelling state interests. Jaycees, 468 U.S. at 624-26; Rotary Club, 481 U.S. at 549; New York State Club Ass'n, 487 U.S. at 11-16.
Further, the degree to which courts will afford protection to a speaker varies with the extent to which the speaker acts as a conduit for the expression of others. Compare Turner, 512 U.S. at 655-56 (First Amendment protection does not apply because cable operators are mere “conduit(s)” for broadcast signals and “there appears little risk that cable viewers would assume that the broadcast stations carried on a cable system conveyed ideas or messages endorsed by the cable operator”); with Hurley, 515 U.S. at 573 (applying First Amendment protection because sponsors of parade are themselves speakers, and not mere conduits for the expression of the marching contingents, “once the expressive character of both the parade and the marching GLIB contingent is understood”), and with Tornillo, 418 U.S. at 258 (applying First Amendment protection to newspapers because they are “more than a passive receptacle or conduit” and “constitute the exercise of editorial control and judgment”).
A private attorney, when representing a client, operates more as a conduit for the speech and expression of the client, rather than as a speaker for herself. Compare Hurley, 515 U.S. at 573 (expressive nature of parade and of requiring inclusion of GLIB causes G.L.c. 272, §98, as applied, to make the parade’s sponsor’s speech itself the public accommodation). In contrast to Hurley, the public accommodation at issue here is the client’s access to legal rights and remedies, rather than use of Nathanson’s speech and her law office as a vehicle for her own expression. As a practical matter, Nathanson’s legal practice aims to elevate the status of divorced women by providing them access to their legal rights and remedies, and Stropnicky sought representation for that purpose (i.e., because he wanted to have his rights vindicated). Nathanson rejected Stropnicky as a client specifically because he is a male, and not because his business would burden any particular message that her legal practice attempts to communicate. Compare Hurley, 515 U.S. at 573 (for homosexuals in parade, “participation as a unit in the parade was equally expressive" and the homosexual organization was “formed for the very purpose of marching in order to celebrate its members’ identity as openly gay, lesbian and bisexual.. .”). The defendant MCAD has sufficiently demonstrated a compelling interest in the elimination of gender discrimination, including elimination of gender discrimination against the male Stropnicky. See generally, Attorney General Desilets, 418 Mass 316, 325 (1994). Even if the MCAD’s interest does not rise to the level of a “compelling interest” because of Stropnicky’s male gender, it is sufficient to overcome the interference with private attorney Nathanson’s free expression.
For these reasons, any free speech activities that Nathanson engages in are subordinate to the state’s compelling interest in eliminating discrimination on the basis of gender.
IV. Conclusion
The arguments Nathanson advances that the MCAD decision is ill-founded are all rejected. Given the limited nature of this c. 30A review, this court is satisfied that the MCAD conclusion that “the law does not allow her to deny service based solely on a potential client’s gender” (MCAD Commissioner’s Decision at p. 10), is supported by substantial evidence and is not arbitrary or capricious or an abuse of discretion. The MCAD order that Attorney Nathanson “cease and desist from engaging in discriminatory conduct” in refusing to represent men in her divorce practice is affirmed.
ORDER
Accordingly, plaintiffs motion for Judgment on the Pleadings is DENIED, and the MCAD decision is AFFIRMED.

This court accepts the facts stated at p. 2 of Nathanson’s motion.
In 1991, Nathanson was an attorney in private practice in Lawrence, MA. She had earned a law degree with the purpose of helping to advance the status of women in the legal system, and her legal work had been devoted to that goal. In her divorce practice, she only represented wives, and not husbands. Nathanson had only a certain amount of time and energy to devote to her clients, and she felt it was essential to use her resources in the effort to redress social and legal wrongs done to women. The report from the Supreme Judicial Court’s Gender Bias Study indicated that women were disadvantaged relative to men in access to the judicial system and treatment within that system. The Gender Bias Study, published in 1989, reinforced Nathanson’s commitment to use her legal talents and time to promote more equal treatment of women in the judicial system.
There is no evidence of Nathanson’s improper animus towards men, as she has represented men in legal matters other than divorce proceedings against women.

Similarly, under the rules in effect today, “[a]ny lawyer . . . engaging in the practice of law in this Commonwealth shall be subject to this court’s exclusive disciplinary jurisdiction . . .” (emphasis added). S.J.C. Rule 3:07 (Preamble).

The current rules reflect a similar requirement. S.J.C. Rule 3:07 (Preamble) (“As advocate, a lawyer zealously asserts the client’s position under the rules of the adversary system”); S.J.C. Rule 3:07, (1.3) (“The lawyer should represent a client, zealously within the bounds of the law”).

Under today’s rules, “[a] lawyer’s conduct should conform to the requirements of the law, both in professional service to *766 clients and in the lawyer’s business and personal affairs” and “[a] lawyer is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.” S.J.C. Rule 3:07 (Preamble).

This is comparable to an attorney with white supremacist views arguing that he or she may decline non-white clients because such a commitment to white supremacy would be undermined.

This court accepts Stropnicky’s claim that he is similarly situated to most of the women that Nathanson typically represents, because he assumed the homemaker and caretaker functions in the family, while his wife earned most of the family income. The record also reveals that Stropnicky supported his wife, now a physician, throughout medical school and that her earnings far exceeded his; Stropnicky’s wife earned at least ten times more than he did. Stropnicky’s marital role further mirrored Nathanson’s female divorce clients because, prior to his wife’s graduation, Stropnicky was responsible for child care and household chores while his wife completed medical school.

G.L.c. 292, §98 states:
Discrimination in admission to, or treatment in, place of public accommodation; punishment, forfeiture, civil right. Whoever makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, deafness, blindness or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement, as defined in Section ninely-two A, or whoever aids or incites such distinction, discrimination or restriction, shall be punished by a fine of not more than twenty-five hundred dollars or by imprisonment for not more than one year, or both, and shall be liable to any person aggrieved thereby for such damages as are enumerated in Section five of chapter one hundred and fifty-one B; provided, however, that such civil forfeiture shall be of an amount not less than three hundred dollars; but such person so aggrieved shall not recover against more than one person by reason of any one act of distinction, discrimination or restriction. All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons. This right is recognized and declared to be a civil right.

As noted in Concord Rod & Gun Club, the statute’s intended broad reach is exemplified by the exemption to §92A that was enacted in 1978, which exempted organizations such as the Boy Scouts or Girl Scouts from the statute’s reach. Specifically, the statute exempts any “corporation or entity authorized, created, or chartered by federal law for the express purpose of promoting the health, social, educational vocational, and character development of a single sex...’’ St. 1978, c. 331. “The enactment of St. 1978, c. 331 would not have been necessary unless, in its absence, such organization would fall within §92A’s definition of ‘a place of public accommodation, resort or amusement.’ ” Concord Rod & Gun Club, 402 at 721.

Nathanson’s private law practice may differ in this regard from advocacy groups such as the NAACP Legal Defense Fund and the National Organization for Women Legal Defense Fund. For these groups, expression on behalf of their respective members may itself be the public accommodation. In any event, this question is not presented by this case.