# United States Court of Appeals
## For the First Circuit

No. 15-2384

IN RE: JOHN E. HOOVER, III,

Debtor,

DAVID G. BAKER,

Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee for Region 1,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

David G. Baker pro se for appellant.
John Postulka, Trial Attorney, Executive Office for U.S. Trustees, Department of Justice, with whom Eric K. Bradford, Trial Attorney, Office of the United States Trustee, Department of Justice, Ramona D. Elliott, Deputy Director/General Counsel, Executive Office for U.S. Trustees, Department of Justice, P. Matthew Sutko, Associate General Counsel, Executive Office for

U.S. Trustees, Department of Justice, <u>Noah M. Schottenstein</u>, Trial Attorney, Executive Office for U.S. Trustees, Department of Justice, <u>William K. Harrington</u>, United States Trustee for Region 1, <u>Richard T. King</u>, Assistant United States Trustee, and <u>Lisa D. Tingue</u>, Trial Attorney, Office of the United States Trustee, Department of Justice, were on brief, for appellee.

———————————

June 29, 2016

———————————

**KAYATTA**, <u>**Circuit Judge**</u>.  Attorney David G. Baker appeals an order of the U.S. Bankruptcy Court imposing a sanction on him for twice describing the applicable law in a manner that it deemed to be misleading.  Finding that the bankruptcy court did not abuse its discretion in construing Baker's submissions as sufficiently misleading so as to warrant a sanction, we affirm.

**I.**

Baker is a very experienced bankruptcy practitioner who regularly appears before the U.S. Bankruptcy Court.  In this case, he represented the Debtor, John E. Hoover, III ("Hoover"), who sought relief under Chapter 11 of the U.S. Bankruptcy Code. Hoover, through Baker, filed his bankruptcy petition on March 15, 2014, four days before the day on which Bank of America, N.A. ("BOA") was to sell his business property in foreclosure.  Hoover's petition was also prompted by the significant tax debt that he owed to the Massachusetts Department of Revenue.

In the wake of Hoover's March 15 filing for bankruptcy protection, BOA did not proceed with the foreclosure sale as previously scheduled.  Instead, BOA continued the sale to June 18, 2014, sending Hoover on April 7 a written notice of the rescheduled date.  BOA also suggested to Hoover its intent to file a motion for relief from the automatic stay.  Seven days later, on April 14, Baker on behalf of Hoover filed a motion seeking sanctions against BOA for violating the automatic stay provisions of the U.S.

- 3 -

Bankruptcy Code.  See 11 U.S.C. § 362.  In that motion, Baker argued that rescheduling the foreclosure sale constituted an improper continuation of debt collection activity under § 362 that warranted sanctions and a cancellation of the rescheduled sale.

In support of this motion, Baker wrote as follows:

> 8.    Where a creditor has notice, continuation of a mortgage foreclosure sale post-petition, without obtaining relief from the automatic stay, is a willful violation. *See* In re Lynn-Weaver, 385 BR 7 (Bkrtcy.D.Mass. 2008), *citing* In re Heron Pond, LLC, 258 BR 529 (Bkrtcy.D. Mass. 2001) (both by Hillman, J.); Hart v. GMAC Mortgage Corp., 246 BR 709 (Bkrtcy.D.Mass. 2000) (Feeney, J.).
>
> 9.    The cases cited in the previous paragraph held, in essence, that a single continuance of a foreclosure sale is not a stay violation *so long as* the creditor seeks relief from the stay prior to the sale date. However, Judge Hillman's holding in Heron Pond was based on "the obscurity of the prevailing legal rule (at least prior to this decision)". That decision was about 13 years ago, and the Lynn-Weaver decision was 6 years ago. The "prevailing legal rule" is no longer obscure. *See also* In re Derringer, 375 BR 903 (10th Cir. BAP, 2007).

(citation formatting and spacing as in original).

On April 18, four days after Hoover filed this motion, BOA filed a motion seeking relief from the automatic stay.  Hoover, nonetheless, persisted with his claim that, by continuing the sale for several months without having first obtained relief from the stay, BOA violated the stay.  On June 2, 2014, the bankruptcy court issued an order denying Hoover's motion for sanctions against BOA.[1]

---

[1] In its order, the bankruptcy court also rejected a second argument that Baker made in his motion for sanctions concerning

Separately, Baker also filed on Hoover's behalf an objection to a motion filed by the U.S. Trustee (the "Trustee") to convert Hoover's bankruptcy case to a case filed under Chapter 7 of the U.S. Bankruptcy Code, or to dismiss it. The Trustee's motion concerned cash that the debtor was spending even though the cash was subject to a tax lien. The Trustee argued that this cash constituted "cash collateral" under 11 U.S.C. § 363(a), and, therefore, could not be spent without the permission of the court.

Baker's attempt to parry the Trustee's motion focused on a claim that "cash collateral" only consists of cash or other property that is subject to a consensual lien. As Baker now admits, no case law so holds. Nevertheless, Baker claimed that the statute itself supported the argument. In his objection that he filed with the bankruptcy court, he wrote that "'cash collateral' means cash or other property 'subject to a security interest as provided in section 552(b) . . .'." Having thus limited the meaning of "cash collateral" to cash subject to a security interest under 11 U.S.C. § 552(b), Baker argued that such a security interest can only arise by agreement; hence, cash in which a creditor has an interest by an involuntary lien is not "cash collateral." The applicable statute, though, plainly does not read as Baker's hybrid paraphrase and partial quote portrayed

---

BOA's refusal to release its trustee process attachment against Hoover's bank account.

it (that cash collateral "means" cash or other property subject to a "security interest"). To the contrary, it provides that cash collateral "means cash . . . or other cash equivalents . . . <u>in which the estate and an entity other than the estate have an interest and includes</u> [certain other things] subject to a security interest as provided in section 552(b)." 11 U.S.C. § 363(a) (emphasis supplied).[2]

After an evidentiary hearing, the bankruptcy court allowed the Trustee's motion and converted the case to one under Chapter 7. This decision was upheld by the district court on appeal. In re Hoover, No. 14-40126-TSH, 2015 WL 5074479 (D. Mass. Aug. 27, 2015). An appeal of the district court's decision is currently pending in this court. See In re Hoover, No. 15-2383 (1st Cir. filed Nov. 17, 2015).

---

[2] Section 363(a) provides in full that

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

On June 2, 2014, the bankruptcy court ordered Baker to show cause why he should not be sanctioned under Federal Rule of Bankruptcy Procedure 9011(b)(2).  As grounds for its order, the court quoted from Paragraph 8 of Baker's motion for sanctions against BOA, observing that the statement Baker made in that paragraph was not a correct statement of law and was not supported by the cases Baker cited therein.  The bankruptcy court also pointed to Paragraph 12 of Baker's objection to the Trustee's motion to convert or dismiss, finding that Baker had "misquot[ed] the definition of cash collateral" and "misstat[ed] the law by claiming that the obligation of a debtor to obtain authority to use cash collateral applies only where the lien on cash is a consensual lien."

In his written response to the order to show cause, Baker argued that the bankruptcy court read Paragraph 8 "out of context." He offered, though, no alternative reading of Paragraph 8, in or out of context.  Instead, he pointed to the fact that the first sentence of Paragraph 9 correctly summarized existing law.  He then described the rest of Paragraph 9 as a type of "nonfrivolous argument for the extension [or] modification . . . of existing law" permissible under Rule 9011.  See Fed. R. Bankr. 9011(b)(2). The "modification" Baker claims to have had in mind was a requirement that, in order to comply with the automatic stay provisions, a creditor must not only move for relief from the

automatic stay before the rescheduled sale date, but must file such a motion "promptly."

Next, in addressing the bankruptcy court's charge that he misquoted the definition of "cash collateral" and misstated the law in his objection to the Trustee's motion to convert or dismiss, Baker doubled down on his prior arguments.  First, he disputed the bankruptcy court's characterization that he "misquot[ed]" the definition of "cash collateral," maintaining that, "at worst, I paraphrased it and omitted words that are not relevant to the context of the motion and objection."  Second, after opining that the bankruptcy court's "real issue" with his objection was the merits of his argument, Baker proceeded to explain why the argument that one must possess a consensual security interest over cash or other property in order for that cash or property to be protected as "cash collateral" was not frivolous.  In his analysis, Baker argued that he had only found two cases on point after "thoroughly research[ing]" the issue, and that although both of those cases interpreted the statute as including non-consensual security interests, they were non-binding and unsatisfactory to him.  He also argued that dictum in another case implied support for his position, and that the "rule of the last antecedent"--whereby a modifier is attributed to the last term before it--is not necessarily controlling and, in this case, is overcome by "textual indications of contrary meaning."

The bankruptcy court rejected Baker's explanations on both counts. In re Hoover, No. 14-40478, 2014 WL 3893354, at *3 (Bankr. D. Mass. Aug. 6, 2014). Referring to Baker's proffered benign reading of Paragraphs 8 and 9 as simply presenting an argument that the law should be modified to require a prompt filing of a motion for relief from the automatic stay, the court observed that the motion itself said "nothing of the kind" and that the proffered reading itself made "no sense" given what Paragraphs 8 and 9 actually said. Id. Referring to Baker's claim that assets subject to non-consensual liens could not be "cash collateral," the bankruptcy court found that the part of the definitional section of the applicable statute that Baker selectively omitted when directly quoting it in his objection was not only relevant to the point being made, but directly rebutted that point. Id. The court explained the difference between "paraphrasing" and "quoting" and found that Baker had "purported to quote a statutory definition," but in doing so had "quot[ed] out of context part of a statute because quoting the statute in its entirety would have disproven his premise." Id. The court also found that Baker's legal analysis in support of his interpretation of § 363(a), while "beside the point," was "absurd because the statute unambiguously states the opposite." Id.

The bankruptcy court went on to observe that this conduct was not uncharacteristic of Baker. Id. at *4. It explained that

- 9 -

on at least three prior occasions Baker had been sanctioned by different sessions of the court for conduct that included asserting frivolous defenses, advancing arguments contrary to express statutory provisions, and filing a meritless motion for sanctions. Id.

In fashioning an appropriate sanction in this case, the bankruptcy court observed that the "hefty" monetary penalties imposed on Baker in those prior cases had not deterred Baker from repeating such conduct. Id. at *5. The court thus decided to impose a non-monetary penalty "in the hope of effecting a more lasting behavioral modification." Id. It ordered Baker to "enroll in and attend in person (not on-line) a one semester, minimum three credit-hour class on legal ethics or professional responsibility in an ABA accredited law school to be completed within 13 months of this order." Id.

## II.

We review a bankruptcy court's decision to impose a sanction for abuse of discretion. In re Charbono, 790 F.3d 80, 85 (1st Cir. 2015).

The sanction in this case was based on the bankruptcy court's finding that Baker transgressed the dictates of Bankruptcy Rule 9011(b)(2). That Rule is substantively identical to Federal Rule of Civil Procedure 11(b)(2). By certifying that the papers he filed with the bankruptcy court complied with Rule 9011, Baker

was obligated to believe, after reasonable inquiry, that the legal contentions he advanced in those papers were not advanced for an improper purpose, such as misleading the court. See Fed. R. Bankr. P. 9011(b). Like its non-bankruptcy counterpart, Rule 9011(b) "is not a strict liability provision" and "ought not [be] invoke[d] . . . for slight cause," but "culpably careless" conduct is enough to warrant a sanction under it. Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st Cir. 2005).

## A.

We turn our attention first to Paragraphs 8 and 9 of Baker's motion for sanctions against BOA. Paragraph 8 is a flat out misstatement of the cases cited therein. To put a fine point on it, even now Baker is unable to make any argument that the statement he made in Paragraph 8 is supported by the cases he cited.

Instead, he argues that the inaccuracy disappears if one reads Paragraph 8 in conjunction with Paragraph 9, the first sentence of which does accurately state what the cited cases say. The remainder of Paragraph 9, though, clearly suggests that the first sentence is itself no longer the law. At best, the two paragraphs are unintelligible, saying in form: "X, although not X when the law was obscure, and now the law is not obscure." In theory, one might hazard a guess that Paragraph 8 should be ignored entirely. Indeed, this is how Baker asks us to read that

- 11 -

paragraph, in substance. He makes no claim, though, that he intended it to be ignored, even now claiming it properly stands "in context."

The bankruptcy court was familiar with Baker and his writings. The inference that the pertinent misstatement was the product not of reasonable mistake, but of something worse, strikes us as reasonable.

Baker's explanation of how we should read his submission suffers, too, from the lack of fit between what he wrote then and what he says now. He argues now that Paragraphs 8 and 9 simply advanced an argument that the case law should be extended or changed so as to include a requirement that the creditor move for relief from the automatic stay not just before the rescheduled sale, but also "promptly." The problem, though, is that Baker filed his motion for sanctions over two months before the rescheduled sale date, even after BOA indicated to him that it intended to file a motion for relief from the automatic stay, and he still persisted even when BOA within days filed the motion. More to the point, if Baker had wanted to argue that BOA had waited too long to seek relief, Paragraph 8 of his motion would have been entirely irrelevant to the motion. The bankruptcy court therefore reasonably read it as an attempt to sow confusion by misleading the reader into thinking that existing authority supported sanctioning BOA merely for rescheduling the sale without first

obtaining relief from the stay.  Such an attempt transgressed the boundary of permissible argument and, here, adequately supported the bankruptcy court's decision to impose a Rule 9011 sanction. See In re Taylor, 655 F.3d 274, 283 (3d Cir. 2011) (explaining that "[i]f the reasonably foreseeable effect of [the] representations to the bankruptcy court was to mislead the court, they cannot be said to have complied with Rule 9011").

## B.

Baker fares no better, and perhaps worse, in defending the arguments he advanced in his objection to the Trustee's motion to convert or dismiss.  As we have described it above, he fashioned support for an otherwise unsupported position by materially mischaracterizing what the statute says, and by leaving out the most relevant, and to his argument, the most discrediting, portion of it.  He took a statute that, in effect, said "A means B, and includes C," and rewrote it to say "A means C."  See Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1357 (Fed. Cir. 2003) (affirming a reprimand under Rule 11 where the attorney "in quoting from and citing published opinions, . . . distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them").

## C.

Bankruptcy courts often need to act quickly, and should be able to assume that counsel are truthful.  Even when they fail

to deceive a court, filings supported only by artifice serve to delay the proceedings and impose costs on the other parties. Here, moreover, the misleading assertions were not merely erroneous detours made in pursuit of otherwise well-grounded filings. Rather, Baker, in each instance, marshalled artifice to provide illusory support for positions that were otherwise without an apparent basis. As the bankruptcy court observed, he has a record of using his knowledge and skills for improper purposes. The bankruptcy court thus confronted, in short, not a lack of ability by counsel but rather an excess of zeal. Sanctioning artifice that is the product of such zeal was well within the bankruptcy court's discretion.

One loose end remains. At oral argument, Baker revealed that he has not begun to comply with the bankruptcy court's order, suggesting that American Bar Association accredited law schools might not allow him to take the required course. Baker has not, however, presented such a claim to the bankruptcy court itself, nor has he challenged the nature of the sanction. We therefore have no cause to consider this issue on this appeal.

## III.

For the foregoing reasons, we <u>affirm</u> the bankruptcy court's order imposing a sanction on Baker.