SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF DAVID GLENN BAKER

 
 Docket:
 August 18, 2025
 
 
 Dates:
 August 18, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Attorney at Law, Disciplinary proceeding, Suspension, Attorney-client relationship, Client funds, Conduct prejudicial to administration of justice. Board of Bar Overseers. Practice, Civil, Failure to make discovery
 
 

             The respondent attorney, David Glenn Baker, appeals from an order of a single justice of this court suspending him from the practice of law for three years.  We affirm.[1]
            1.  Background.  On August 11, 2022, the Office of Bar Counsel (bar counsel) filed with the Board of Bar Overseers (board) a three-count amended petition for discipline alleging that the respondent had violated a number of the Massachusetts Rules of Professional Conduct.  Each count related to a separate client matter, two of which involved bankruptcy proceedings and one of which involved bankruptcy, foreclosure, and eviction proceedings.  In the first two bankruptcy matters, the allegations of misconduct included asserting frivolous claims, making false statements, and failing to obey court orders.  In the third matter, the allegations of misconduct related to the scope of the respondent's representation of, and the fees charged to, his clients as well as to his failure to transmit excess foreclosure proceeds to the proper party.   
            The respondent filed an answer to the amended petition through counsel, although his counsel subsequently withdrew, and the respondent thereafter proceeded pro se.  After a hearing, which spanned two days in December 2023, and at which the respondent was the only testifying witness, the hearing committee found that the respondent had violated a number of rules of professional conduct and recommended that he be suspended from the practice of law for three years.[2]  The board adopted the hearing committee's findings, conclusions, and recommendations, and thereafter filed an information in the county court pursuant to S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).  A single justice reviewed the record, accepted the board's recommendation, and ordered that the respondent be suspended from the practice of law for three years.  The respondent appeals.
            2.  Disciplinary violations.      The petition for discipline filed by bar counsel contained three counts.  We summarize the relevant factual findings of the hearing committee, as adopted by the board, as to each count, and agree with the single justice that these facts are supported by substantial evidence.  See S.J.C. Rule 4:01, § 8 (6).
            a.  Count one.  Count one concerned the respondent's representation of a client in a bankruptcy proceeding in the United States Bankruptcy Court for the District of Massachusetts (bankruptcy court).  After the respondent filed, on behalf of his client, a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, the bankruptcy trustee filed a motion to convert the case to one under Chapter 7 of the code or, alternatively, to dismiss the case (motion to convert or dismiss).  The respondent opposed the motion and filed, as well, a motion for sanctions against a bank, claiming that the bank had violated an automatic stay (motion for sanctions).  A judge denied the motion for sanctions and issued a show cause order directing the respondent to show cause why he should not be sanctioned for violating Fed. R. Bankr. P. 9011.[3]  Essentially, the show cause order stated that the respondent had misstated the law in both the opposition to the motion to convert or dismiss and the motion for sanctions and had cited as authority cases that did not support his claims.
            After a hearing on the show cause order, the judge found that the respondent had cited both case and statutory law that stood for exactly the opposite of what the respondent claimed the law stood for, and imposed sanctions on the respondent.  In reaching his decision, the judge considered the fact that the respondent had been sanctioned three times previously for similar violations of rule 9011.  The judge also noted that the monetary sanctions that had been imposed for the previous violations had not been effective, given that the respondent continued to violate the rule, and the judge instead sanctioned the respondent by requiring him to attend, in-person, a semester-long legal ethics or professional responsibility class at an accredited law school.4
            The respondent failed to comply with the order.  Although he enrolled in an appropriate class, he failed to complete it.  The bankruptcy court judge subsequently issued a second show cause order, directing the respondent to show cause why the judge should not impose additional sanctions.  After a hearing on the second show cause order, the judge found that the respondent had not provided any reasonable justification for failing to comply with the first order and imposed a further sanction of $10,000 if the respondent failed to complete a legal ethics course.  The respondent failed to complete the course and paid the $10,000 fine.
            The hearing committee found, and the board accepted, that the respondent violated Mass. R. Prof. C. 3.3 (a) (1), as appearing in 471 Mass. 1416 (2015), by knowingly making false statements of law.  The respondent argues that he did not make any false statements knowingly but rather that he simply misunderstood the law.  As the hearing committee noted, however, the respondent cited case and statutory law that simply did not support his position.  Moreover, and perhaps more importantly, the respondent had been sanctioned previously for the same behavior, i.e., intentional mischaracterization of the law.
            The hearing committee also found, and the board accepted, that the respondent violated Mass. R. Prof. C. 3.4 (c), as appearing in 471 Mass. 1425 (2015), because he knowingly disobeyed an obligation by failing to attend and complete the ethics class.  The respondent argued that his failure to complete the class was due to medical issues, but he failed to produce any records to support this claim.  As to the lack of medical records, he states that this is due to bar counsel preventing him from introducing the records before the hearing committee.  
            Among other arguments, the respondent suggests that he was unaware that, prior to withdrawing, the attorney who had been representing him had not produced the records to bar counsel and that bar counsel did not so notify the respondent.  Bar counsel, however, neither had an obligation to notify the respondent nor prevented introduction of the records; rather, she filed a motion in limine to preclude the respondent from introducing evidence at the hearing that he had not previously disclosed, as he had been required to do.  The hearing committee allowed the motion.  The lack of any medical records to support his claims that he could not complete the required ethics class was, in short, a problem of the respondent's own making.  Furthermore, he had several years to complete an acceptable course and still failed to do so.     
            Additionally, the respondent suggests that the sanction imposed by the bankruptcy court judge required the respondent to take an ethics class or to pay $10,000.  And, because he paid the $10,000, the respondent has not disobeyed a court order.  As the board noted, however, this argument misconstrues the sanction -- the $10,000 fine was not an alternative to taking the ethics class; it was a penalty for failing to do so.
            Finally, as to count one, the hearing committee found, and the board accepted, that the respondent violated Mass. R. Prof. C. 8.[4] (d) and (h), as appearing in 471 Mass. 1483 (2015).  In engaging in the actions just delineated, in connection with count one, the respondent violated both rules, which address, respectively, "conduct . . . prejudicial to the administration of justice" and "conduct that adversely reflects on . . . fitness to practice law." 
            b.  Count two.  Count two also concerned the respondent's actions in representing a client in a bankruptcy proceeding.  The respondent initially filed a motion to dismiss an adversary proceeding that had been requested by a creditor, which the bankruptcy court judge converted to a motion for summary judgment and denied.  Numerous discovery violations, by the respondent and his client, soon followed.  Among other things, the respondent's client failed to appear for a deposition and to respond to certain discovery requests, the latter even after the judge had allowed a motion to compel filed by the creditor.[5]  The creditor eventually filed a motion seeking additional sanctions against both the respondent and his client on the basis of continued discovery violations, and also sought the entry of a default judgment.[6]
            At a hearing on the creditor's motions, the judge asked the respondent why the court should not enter a default judgment against the respondent's client.  In response, the respondent, as the hearing committee phrased it, "intentionally attempted to divert and confuse the court by referencing interrogatory answers, which were not the subject of the court's questions."  The judge ultimately did enter a default judgment against the client, as a sanction for noncompliance with the various discovery orders, and exempted from discharge the client's debt to the creditor.  Additionally, the judge ordered the respondent to pay various fees and expenses, again as a sanction.
            The respondent then filed a motion seeking relief from the various bankruptcy court orders -- denying summary judgment, for sanctions, and for default judgment.  The motion was denied, and the respondent's appeal from that denial to the United States Bankruptcy Appellate Panel for the First Circuit was similarly unsuccessful.  The respondent then appealed from the appellate panel's decision to the United States Court of Appeals for the First Circuit, which affirmed all the judgments.  In doing so, the First Circuit stated, in connection with the default judgment, that 
"[w]hat began as a missed deposition quickly snowballed into a pattern of discovery abuses –- including multiple failures to produce or respond to discovery requests, arguably sarcastic and evasive responses to interrogatories, and an overall unwillingness to appropriately engage with opposing counsel and follow the rules of discovery.  Most concerningly, these violations continued even after the bankruptcy court had ordered [the respondent] to comply with certain requests and had already imposed [a] lesser sanction of fees for earlier abuses." 
In re Buscone, 61 F.4th 10, 29 (1st Cir. 2023).
            The hearing committee found, and the board accepted, that the respondent violated Mass. R. Prof. C. 3.3 (a) (1) -- that he knowingly made false statements of material fact or law -- when he falsely claimed that he, and his client, had responded to certain discovery requests when that had not been done.  As he did in connection with count one, the respondent here argues that he did not "knowingly" make false statements to the court, but the record demonstrates the respondent's apparent efforts to confuse matters rather than to simply provide requested discovery responses.  This is particularly so where the respondent did eventually admit that the discovery requests in question had not been answered nor the documents provided.  This is not, in short, a circumstance where the respondent simply made a mistake in failing to provide certain discovery.  To the extent the respondent argues that the discovery requests were improper or sought irrelevant evidence, that is, at this stage, beside the point.
            The hearing committee also found, and the board accepted, that, in connection with count two, the respondent violated Mass. R. Prof. C. 3.4 (c) and (d) because he knowingly disobeyed an obligation and because he failed to make a reasonably diligent effort to comply with a discovery request.  The respondent does not specifically address these findings, and in any event, on the basis of the foregoing the respondent violated these rules.  The same holds true for Mass. R. Prof. C. 8.4 (d) and (h) -- the respondent does not specifically address the findings that he violated these rules in connection with count two, and as stated above in connection with count one, he has done so.   
            c.  Count three.  Count three concerns the respondent's representation of a mother and daughter in proceedings related to the foreclosure of the condominium where they resided.  The condominium was the sole asset of the estate of the mother's deceased mother (the grandmother).  The mother and her sister were the personal representatives of the grandmother's estate.  For several years after the grandmother's death, the mother made monthly mortgage payments to the mortgagee, Massachusetts Housing Finance Agency (MHFA).  After the mother stopped making payments, MHFA sold the condominium at a foreclosure sale, and the new owner commenced a summary process action to evict the mother and daughter.  
            In an unsuccessful effort to stop the eviction, the daughter, pro se, commenced a bankruptcy proceeding.  That proceeding was ultimately dismissed after the daughter failed to file required documents.  The daughter then retained the respondent, who filed, on the daughter's behalf, a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code.  The respondent also filed the necessary fee agreement regarding his representation of the daughter.  Although the mother, rather than the daughter, paid some of the respondent's fee, the respondent failed to obtain a written waiver from the daughter regarding the fact that someone else was paying the respondent's fee.
            The respondent also filed an adversary proceeding in the bankruptcy court naming both the mother and the daughter as plaintiffs and asserting a violation of the automatic stay; a violation of G. L. c. 239, § 4, related to the eviction; and a wrongful foreclosure.  The court dismissed the mother as a plaintiff, and the respondent later settled the matter on the daughter's behalf for $40,000.  The respondent received $10,000 of the settlement amount, but there was no evidence of any written agreement in which the daughter had agreed to this or that the respondent was entitled to this amount.  Additionally, there was no evidence that the respondent entered into any kind of fee agreement regarding his representation of the mother in the adversary proceeding.
            Separately, MHFA commenced an interpleader action in the Superior Court naming the mother and her sister, among others, as defendants, in connection with the foreclosure sale.  The complaint indicated that the foreclosure had resulted in excess proceeds in the amount of approximately $70,000, and MHFA sought the court's authority to deposit the funds with the court so that the parties could determine how to divide the proceeds.  The respondent filed a notice of appearance on the mother's behalf, although, again, there is no evidence that the mother had specifically retained the respondent for this purpose.  Eventually, a check in the amount of approximately $34,000 payable to the estate was sent to the respondent; he made minimal efforts to disburse the funds.   
            The respondent subsequently filed an interpleader complaint in the Probate and Family Court case concerning probate of the grandmother's estate, seeking attorney's fees from the excess proceeds, i.e., from the $34,000.  In so doing, he noted that he had no written agreement for any such attorney's fees, but that, essentially, he planned to withhold attorney's fees from the excess proceeds and disburse the remainder.  He also filed a number of other documents in the probate case, identifying himself as the mother's attorney or as a fiduciary of the estate, notwithstanding that he had never represented the mother in the probate proceedings.
            The hearing committee found, and the board accepted, that, in connection with count three, the respondent violated Mass. R. Prof. C. 1.3, as appearing in 471 Mass. 1318 (2015), and Mass. R. Prof. C. 1.15 (c), as appearing in 471 Mass. 1380 (2015), when he failed to act with reasonable diligence to disburse the excess foreclosure proceeds.  The respondent argues that he was diligent, but as the hearing committee found, it took him approximately seven months to make any real effort to have the proceeds disbursed.   
            The hearing committee also found, and the board accepted, that the respondent violated Mass. R. Prof. C. 1.5 (b) (1), as appearing in 463 Mass. 1302 (2012), which requires that, as is relevant here, the scope of representation and the fee structure be communicated to a client in writing, because he never provided the daughter with a written agreement in connection with the adversary proceeding.  The respondent does not contest the lack of written agreement but rather argues that no harm was done.  He does not elaborate, and this is, in any event, beside the point.  The rules of professional conduct required a written agreement in the circumstances, and the respondent failed to secure one.
            Finally, the hearing committee found, and the board accepted, that the respondent violated Mass. R. Prof. C. 3.3 (a) (1), 8.4 (d), and 8.4 (h), because he intentionally misrepresented himself to the Probate and Family Court as the mother's attorney and as the estate fiduciary, neither of which was true.  The respondent argues that he never identified himself as the mother's attorney in the probate case and that he only identified himself as the estate fiduciary because he had possession of the foreclosure proceeds check.  The respondent, however, filed documents in the probate case, signed under the pains and penalties of perjury, in which he identified himself as the mother's attorney and as the estate fiduciary.  As with counts one and two, the respondent made false statements to the court, in violation of Mass. R. Prof. C. 3.3 (a) (1), and, again, in engaging in the conduct associated with count three, violated both Mass. R. Prof. C. 8.4 (d) and (h).
            3.  Sanction.  The single justice accepted the board's recommendation that a three-year suspension from the practice of law was appropriate.  On appeal, "[w]e review discipline imposed by a single justice to determine whether the sanction 'is markedly disparate from judgments in comparable cases.'"  Matter of Slavitt, 449 Mass. 25, 30 (2007), quoting Matter of Finn, 433 Mass. 418, 423 (2001).  "In applying this standard, it is appropriate for us to consider the cumulative effect of the several violations committed by the respondent."  Matter of Palmer, 413 Mass. 33, 38 (1992).  See Matter of Ablitt, 486 Mass. 1011, 1017 (2021).  Giving "substantial deference" to the board's recommendation, see Matter of Tobin, 417 Mass. 81, 88 (1994), we agree that a three-year suspension is warranted.  
            The respondent argues that a three-year suspension is a markedly disparate sanction, relying on Matter of Foley, 439 Mass. 324 (2003), to support his argument.  In that case, the court imposed a three-year suspension on an attorney who had "assist[ed] and encourag[ed] his client in the preparation of a fabricated defense to a criminal complaint."  Id. at 324.  Here, the respondent argues that his conduct was in no way comparable and, therefore, the same sanction is not warranted.  The respondent is correct that the conduct, at least, is not comparable -- indeed, Matter of Foley involved conduct entirely different from the respondent's conduct at issue here -- but it does not follow that a three-year suspension is a markedly disparate sanction from cases that involved more similar conduct.  Moreover, the respondent's arguments ignore the fact that he violated numerous ethical rules spanning three different cases.
            In reaching its decision to recommend a three-year suspension, the board first addressed what it considered to be the respondent's most serious offenses:  the numerous times he knowingly made false statements of fact or law to the courts, in violation of Mass. R. Prof. C. 3.3 (a) (1), and the related professional misconduct in violation of Mass. R. Prof. C. 8.4 (d) and (h).  In cases in which an attorney has made intentionally false statements to a court, a one-year suspension has been imposed.  See Matter of McCarthy, 416 Mass. 423, 431-432 (1993); Matter of Neitlich, 413 Mass. 416, 421-422 (1992).  When those statements have been under oath, the concomitant sanction has been at least a two-year suspension.  See Matter of Diviacchi, 475 Mass. 1013, 1020-1021 (2016), and cases cited.  Here, the respondent made multiple false statements or misrepresentations, of both fact and law, in multiple courts and in three different cases.  Additionally, he had engaged previously in similar such behavior.  
            These violations alone would warrant a two-year suspension, but of course, these are not the only violations.  The respondent also violated several other rules, and in arguing that a three-year suspension is disparate, the respondent fails to account for the variety and number of violations.  We need 
not -- and we do not -- consider each of the violations individually.  "[I]t is well established that disciplinary violations are not viewed in isolation.  We consider instead the 'cumulative effect of the several violations committed by the respondent.'"  Matter of Zak, 476 Mass. 1034, 1039 (2017), quoting Matter of Palmer, 413 Mass. at 38.  See Matter of Saab, 406 Mass. 315, 326 (1989) ("The simultaneous consideration of separate violations . . . is an established part of the disciplinary system of this Commonwealth").  Even where some of the violations would warrant only an admonition or public reprimand, others, particularly the violations of Mass. R. Prof. C. 3.3 (a) (1), 8.4 (d), and 8.4 (h) explained above, warrant a term suspension.  And even the minor violations cumulatively could warrant a more substantial sanction than each would warrant on its own.  Taken together, the respondent's multiple violations of multiple rules of professional conduct warrant the three-year suspension imposed here.   
            To the extent that the respondent suggests that the sanctions imposed by the bankruptcy court in connection with both counts one and two should lessen the sanction imposed here, the bankruptcy court sanctions do not govern the respondent's ethical violations.  "The primary factor in bar discipline cases is 'the effect upon, and perception of, the public and the bar.'"  Matter of Zak, 476 Mass. at 1041, quoting Matter of Finnerty, 418 Mass. 821, 829 (2008).  That was not the reason for, or the point of, the sanctions in the bankruptcy court.  
            4.  Other issues.  We address, briefly, three other issues raised by the respondent.  First, the respondent argues that bar counsel should have been barred from bringing count one on the basis of laches.  In his view, the length of time that elapsed between when the events of count one occurred, largely between 2014 and 2016, and when bar counsel filed the petition for discipline in 2022, is a "mitigating" delay.  The board did not agree, and neither do we.  As the board noted, the respondent was not prejudiced by any delay, and additionally, the events of count one were not fully concluded until 2021.
            Second, he argues that the assistant bar counsel who has represented bar counsel throughout these proceedings had a conflict of interest and should therefore have been recused.  The respondent raised the issue at the outset of the proceedings, and bar counsel denied the respondent's recusal request.  The respondent did not raise the issue with the hearing committee or before the board but did raise it before the single justice.  On the basis that the respondent had not raised the issue with the hearing committee or before the board, the single justice deemed it waived.  There was no error.  See Matter of Foster, 492 Mass. 724, 760 n.16 (2023), citing Matter of Gannett, 489 Mass. 1007, 1009 (2022) (issues not raised before the hearing committee or board are deemed waived).  The respondent's suggestion that if he had raised the issue before the hearing committee or the board, he "would be criticized (if not chastised) for raising it again," after he had raised it with bar counsel, does not excuse his failure to raise it at the appropriate time, before the hearing committee.
            Third, and finally, in connection with the proceedings before the hearing committee, the respondent notes that he was the only witness who testified before the committee and suggests that there was no "conflicting testimony" that the hearing committee could credit over the respondent.  In other words, it seems, the respondent is arguing that because he was the only testifying witness, the hearing committee was required to credit his testimony.  The hearing committee was under no such obligation.  The respondent is not wrong that assistant bar counsel's arguments were not evidence, but there was ample documentary evidence to support those arguments and upon which the hearing committee could, and did, base its findings and conclusions. 
            5.  Conclusion.  For all these reasons, we affirm the order of the single justice suspending the respondent from the practice of law for three years. 
So ordered.
            The case was submitted on the record, accompanied by a memorandum of law.
            David Glenn Baker, pro se.
 
footnotes

 
            [1] We have reviewed the respondent's preliminary memorandum and appendix, as well as the record that was before the single justice.  Pursuant to S.J.C. Rule 2:23, 471 Mass. 1303 (2015), we dispense with further briefing and oral argument.
            [2] The hearing committee found that the respondent violated Mass. R. Prof. C. 1.3, as appearing in 471 Mass. 1318 (2015); Mass. R. Prof. C. 1.5 (b) (1), as appearing in 463 Mass. 1302 (2012); Mass. R. Prof. C. 1.15 (c), as appearing in 471 Mass. 1380 (2015); Mass. R. Prof. C. 3.3 (a) (1), as appearing in 471 Mass. 1416 (2015); Mass. R. Prof. C. 3.4 (c) and (d), as appearing in 471 Mass. 1425 (2015); and Mass. R. Prof. C. 8.4 (d) and (h), as appearing in 471 Mass. 1483 (2015).
            [3] Rule 9011 of the Federal Rules of Bankruptcy Procedure, which mirrors Fed. R. Civ. P. 11, provides in relevant part:
"(b) Representations to the Court.  By presenting to the court a petition, pleading, written motion, or other document . . . an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
". . .
"(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
". . .
"(c) Sanctions.
"(1) In General.  If, after notice and a reasonable opportunity to respond, the court determines that (b) has been violated, the court may . . . impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it."     
            [4] The respondent's subsequent appeals from the sanctions order to the United States District Court for the District of Massachusetts, and then to the United States Court of Appeals for the First Circuit, were unsuccessful.  In rejecting the respondent's various arguments, and affirming the order, the First Circuit stated that the respondent had "marshalled artifice to provide illusory support for positions that were otherwise without an apparent basis.  As the bankruptcy court observed, he has a record of using his knowledge and skills for improper purposes."  In re Hoover, 827 F.3d 191, 197 (1st Cir. 2016).
            [5] Additionally, the judge ordered the respondent personally to pay $500 for the stenographer for the deposition that the defendant had failed to attend.  
            [6] Among other things, the respondent and his client had still not provided certain discovery and had provided answers to interrogatories that were nonresponsive or inappropriate.